FILED '11 MAR 25 12:09 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DAVID ANDERSON, | 09-0971-TC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner Social Security Administration, | |
| Defendant. | |

COFFIN, Magistrate Judge:

Plaintiff David Anderson seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act. For the following reasons, I recommend that this court reverse and remand the Commissioner's decision for further proceedings consistent with the findings below.

## Background

Born in 1960, Anderson completed high school and graduated from Western Baptist College in 2004. He last worked on February 14, 2006 as a cook-supervisor at the Federal Correctional

Page 1 - FINDINGS AND RECOMMENDATION

Institute in Sheridan. He filed an application for benefits on June 27, 2006, alleging disability based on combined impairments of major depressive disorder, anxiety disorder, sacroiliitis, degenerative disc disease, sarcoidosis, hepatitis C, irritable bowel, acid reflux disease, gastrointestinal bleeding, low testosterone, torn lumbar disc, colitis and asthma. (Tr. 95, 129).

Anderson's application was denied initially and upon reconsideration. On December 29, 2008, an Administrative Law Judge (ALJ) held a video hearing from Eugene, Oregon. Anderson, who was represented by an attorney, testified from Salem, Oregon. A vocational expert (VE) also testified. The ALJ subsequently found that, although Anderson had severe impairments and could not return to his past relevant work, he retained the residual functional capacity (RFC) to perform other light, unskilled jobs that exist in the national economy, and therefore, he was not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. Anderson seeks review of this finding.

## Disability Analysis

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act. Bowen v. Yukert, 482 U.S. 137, 140 (1987). Anderson challenges the ALJ's evaluation of the evidence and her conclusions at steps two through five.

Step one requires the ALJ to determine if the claimant is performing any gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. Id. at § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled. At step three, the ALJ determines whether the severe impairment

Page 2 - FINDINGS AND RECOMMENDATION

(or a combination of impairments) meets or equals a "listed" impairment in the regulations. Id. at 404.1520(a)(4)(iii). If the ALJ determines the impairment (or combination of impairments) equals a listed impairment, then the claimant is disabled. If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. Id. 404.1520(a)(4)(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. Id. 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. 404.1520(a)(4)(v); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability. Tackett, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

## The ALJ's Findings

At step two, the ALJ found that Anderson's asthma, hepatitis C, low back pain without neurological deficits, and depression were severe. At step three, the ALJ found that Anderson did not have a impairment or combination of impairments that meets or equals one of the listed impairments. The ALJ evaluated Anderson's RFC as follows:

> Mr. Anderson has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 2 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday. He requires the option to change positions between sitting and standing at will. Mr. Anderson is precluded from climbing ladders, ropes, and scaffolds. He is limited to occasional climbing of stairs,

Page 3 - FINDINGS AND RECOMMENDATION

> stooping, crouching, kneeling, and crawling. He should avoid concentrated exposure to vibration, workplace hazards such as moving machinery or heights, and inhaled irritants. Mr. Anderson should have no public contact. He is limited to simple 1 to 3 step tasks.

(Tr. 21). At step four, the ALJ found that Anderson was unable to perform any past relevant work. The ALJ considered Anderson's "age, education, work experience, and residual functional capacity," and found at step five that Anderson could perform a significant number of jobs in the national economy. Thus, the ALJ determined that Anderson was not disabled under the Act.

## Standard of Review

This court's review is limited to whether the Commissioner's decision to deny benefits to Anderson is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence that a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).

The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Page 4 - FINDINGS AND RECOMMENDATION

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### Discussion

Anderson contends that the ALJ failed to properly consider his sarcoidosis, sacroiliac joint dysfunction, and irritable bowel syndrome in combination with his other impairments in her step two analysis. He claims the step three analysis was deficient because it did not consider whether Anderson's combined impairments, severe and non-severe, met or equaled any listing. He asserts that the ALJ failed to fully and fairly develop the record at step four because she did not obtain evidence of his job absences and, instead, relied on speculation. Anderson contends the ALJ also erred at this step because the ALJ failed to incorporate her findings that Anderson had the severe impairment of depression and had moderate difficulties in concentration, persistence, or pace into the RFC. He claims she also failed to consider physical limitations caused by his sarcoidosis, sacroiliac joint dysfunction, and irritable bowel syndrome. Finally, Anderson argues that the ALJ erred at step five because the findings at step five are based on the errors committed in steps one through four and because no evidence supports that the jobs identified by the VE can be performed by someone with Anderson's limitations of no public contact and limited to simple 1 to 3 step tasks.

### I.   Mental Impairment RFC

Anderson argues that the ALJ found that he has moderate difficulties in maintaining concentration, persistence or pace, but failed to include this limitation in the RFC analysis. (dkt. #13, 8). He contends the limitation to simple one-to-three step tasks is insufficient to address such a limitation.

Page 5 - FINDINGS AND RECOMMENDATION

In assessing Anderson's limitations in maintaining concentration, the ALJ noted the results of medical testing and of Dr. Ford's opinion that Anderson's medications affected his ability to concentrate. The ALJ considered Anderson's wife's testimony that he could only pay attention for a maximum of twenty minutes, but also noted that Anderson had taken an art class twice a week and spent his spare time reading. (Tr. 20-21).

As previously stated, RFC is what a person can still do despite his limitations. 20 C.F.R. § 404.1520(a)(4)(e). I find that the ALJ's accommodation of Anderson's moderate difficulties with concentration, persistence or pace by restricting him to simple one-to-three step tasks is reasonable. Moderate, and even marked, limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks. Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also, Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's finding that claimant was restricted to "simple tasks" did not constitute a rejection of physician's opinion that claimant was moderately limited in the ability to maintain a consistent pace).[1]

However, as discussed below, I find that the ALJ's decision to give minimal weight to treating physician Dr. Ford's opinion her finding that the testimony of Anderson and the lay witness were only partially credible should not be sustained. Thus, on remand, the ALJ should re-address the mental impairment of the RFC finding, if it is implicated by the reconsideration of the medical opinion and Anderson's and the lay witness's credibility.

///

---

[1] Anderson's argument that the Stubbs-Danielson decision is inapposite is not persuasive. Both Stubbs-Danielson and the instant case involve allegations that the ALJ failed to incorporate findings regarding moderate difficulties with concentration into the RFC.

Page 6 - FINDINGS AND RECOMMENDATION

## II. Medical Source Statements and Physical RFC

Anderson submits that treatment notes from his treating physician, Dr. Ford, establish that he should not bend and should refrain from repetitive lifting. Anderson also challenges the ALJ's rejection of state agency reviewing physician, Dr. Kehrli, who gave full credit to Dr. Ford's opinion that Anderson should not bend.

The ALJ considered treatment notes produced by Dr. Ford, which indicated that Anderson suffered from chronic back pain, suffered moderate mobility restrictions due to the back pain, and should not bend. The ALJ ultimately gave minimal weight to Dr. Ford's opinion because "the limitations he identified are inconsistent with his conclusion that Anderson's then current job functions were acceptable" and "it is unclear which assessment Dr. Ford meant to be controlling." The ALJ further noted that Anderson returned to Dr. Ford after he stopped working and indicated that "his limitations were not as great as Dr. Ford suggested." (Tr. 24). She did not specifically address Dr. Kehrli's opinion, but did state that she gave "significant weight to the assessments made by State agency medical consultants." The ALJ gave "significant weight to agency physician Dr. Brewster's opinion because it 'was the most recent evaluation" and was "consistent with the medical evidence of record." The ALJ did find that Anderson was more limited than what Dr. Brewster opined. (Tr. 24).

Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating physician. Id. Likewise, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Id.

Page 7 - FINDINGS AND RECOMMENDATION

A. **Treating Physician Dr. Ford's Opinion**

Dr. Ford's September 15, 2005 letter regarding Anderson's worker's compensation claim noted that Anderson was "off work completely from February through July due to lumbar strain and sacroiliac dysfunction with underlying degenerative disc disease." Dr. Ford noted that Anderson was offered his then-current position in April 2005 but was "unable to resume work due to the persistence of his symptoms." Dr. Ford noted that Anderson's job required him to bend, "which he is not supposed to be doing." (Tr. 332). A May 13, 2005 letter in support of Anderson's worker's compensation action notes that "temporary duty assignment of front lobby officer and FTC visiting room officer should be reasonable for him." (Tr. 341).

A physician's opinion must be supported by adequate notes, records, or clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Ford's clinical notes suggest that Anderson should never bend, twist, crawl or climb. (Tr. 341). The ALJ is correct that Dr. Ford concluded that Anderson's current job functions were acceptable, despite Dr. Ford's opinion that Anderson should never bend. What the ALJ fails to note, however, is that the job that Dr. Ford opined was acceptable was Anderson's fall 2005 temporary position, not his regular cook supervisor job. (Tr. 341). Accordingly, the record does not support the ALJ's finding that Dr. Ford's work capacity assessment was inconsistent.

The ALJ also based her decision to give minimal weight to Dr. Ford's opinion because Anderson "returned to Dr. Ford after working and reported that his limitations were not as great as Dr. Ford had suggested." (Tr. 24). The ALJ does not specifically cite where in the record Anderson made this report, but I have reviewed Dr. Ford's treatment notes after February 2006, which is when Anderson stopped working. A treatment note from May 2006 notes "[p]ain better now not [sic]

Page 8 - FINDINGS AND RECOMMENDATION

working." (Tr. 313). A June 2006 treatment note reflects, among other things, that Anderson's "[b]ack pain improved." (Tr. 311). A July 2006 report prepared by Dr. Ford observed that Anderson reported continued low back pain and some days the pain was more severe than others. (Tr. 306). Anderson got "reasonable relief with MS Contin" and took "Vicodin between 2 and 4 a day." (Tr. 306). Anderson reported that "[m]obility is moderately limited by his pain." (Tr. 306). While the record does indicate that Anderson's back pain improved after he stopped working (and presumably was no longer required to bend and stoop), it does not establish that Anderson told Dr. Ford that his limitations were not as great as Dr. Ford suggested.

For these reasons, the ALJ failed to articulate clear and convincing reasons for only minimally crediting Dr. Ford's opinion. While the ALJ was not bound by Dr. Ford's opinion, she should have considered his work capacity assessment.

### B. Reviewing Physician Dr. Kehrli's Opinion

Dr. Kehrli opined that Dr. Ford's opinion that Anderson should not bend was "consistent [with] the initial postural limitations given and is given full weight." (Tr. 435). The ALJ stated that she gave "significant weight to the assessments made by State agency medical consultants" but ultimately concluded that Anderson could occasionally bend. This conflicts with Dr. Kehrli's opinion that Anderson should not bend.

As noted above, the ALJ's decision to give minimal weight to treating physician Dr. Ford's capacity assessment is not sustained. Her decision to give less weight to Dr. Kehrli's reviewing opinion appears to be tied to Dr. Kehrli's reliance on Dr. Ford's findings and the opinion being less recent than Dr. Brewster's assessment. I find that on remand the ALJ should reconsider Dr. Kehrli's opinion to the extent that it was given less weight based on its reliance on Dr. Ford's opinion.

Page 9 - FINDINGS AND RECOMMENDATION

### C. <u>Physical RFC</u>

As discussed, a RFC is a reflection of what Anderson can do despite his physical limitations. Anderson argues that the ALJ erred in failing to find that his sarcoidosis, sacroiliac joint dysfunction and irritable bowel syndrome were not severe impairments. He also argues that she erred in failing to consider these impairments in combination with his other impairments.

The ALJ considered Anderson's joint pain and irritable bowel syndrome and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." She, however, concluded that his statements concerning the "intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with [the RFC]." (Tr. 22). As noted above, the ALJ's RFC determination was based, in part, on her giving minimal weight to treating physician Dr. Ford's opinion. Moreover, I find that the ALJ erred in the physical RFC analysis because she did not consider Anderson's crediblity in the course of assessing the RFC as required by the regulations. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Instead, she appears to have first determined Anderson's RFC and then disregarded his testimony to the extent it conflicted with the RFC. I find that the ALJ's physical RFC cannot be sustained.

### III. <u>Credibility Findings</u>

Anderson contends that the ALJ failed to give clear and convincing reasons for discrediting his testimony. An ALJ performs a two-step analysis in her credibility finding. First, the ALJ determines if the claimant has shown an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged." <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Smolen, 80 F.3d at 1273). If the claimant establishes such an impairment, and there

is no finding of malingering, an ALJ proceeds to the second step, where she must provide "clear and convincing" reasons for finding a claimant not credible. Id. Once a claimant has shown an underlying impairment, an ALJ may not reject the symptom testimony without specific findings showing clear and convincing evidence for doing so. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1986). The ALJ may not reject symptom testimony because the medical record does not corroborate the severity of the claimant's reported symptoms. Id. The ALJ's credibility finding must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record and observations of third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. Finally, an ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id.

The ALJ found that Anderson had underlying impairments that could reasonably be expected to cause his alleged symptoms. She noted, however, that his statements concerning the "intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 22).

The ALJ's credibility analysis states:

> Mr. Anderson made claims to the V A that his absenteeism was solely the result of his service connected hepatitis C, which led to his award of benefits. At hearing, he stated that his absences were related to more impairments than his hepatitis C alone. During the consultative examination by Dr. Brewster, Mr. Anderson displayed positive Waddell's signs, which suggests that the degree of his back pain may be overstated. Given the open status of a worker's compensation action in addition to this application for social security benefits, I believe the issue of secondary gain looms large. Mr. Anderson has

Page 11 - FINDINGS AND RECOMMENDATION

multiple MRIs with unremarkable results and,
> although Dr. Ford lists lumbar degenerative disc disease as a longstanding diagnosis, the objective evidence only shows minimal degenerative changes at most. Mr. Anderson testified that he has severe IBS, but there is no weight loss evident to support the usual symptoms of such a claim. For these reasons, I find Mr. Anderson's testimony is only partially credible.

(Tr. 22). Anderson challenges the credibility determination on several grounds: (1) that the ALJ misconstrued the record regarding the claims Anderson made to the VA; (2) that the ALJ's interpretation of the positive Waddell's signs is not supported by substantial evidence; (3) that she erred when in considering his worker's compensation claim; and (4) that she erred by considering the lack of objective medical evidence.

### A.  Credibility and RFC Assessment

As noted above, I find that the ALJ's analysis reversed the manner in which she must consider credibility. The ALJ must consider a claimant's credibility in the course of assessing a residual functional capacity. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Here, the ALJ first found that Anderson's credibility was limited "to the extent" that it was "inconsistent with the above residual functional capacity assessment." (Tr. 22). No authority suggests that an ALJ may reason that a claimant is not credible based on the claimant's RFC. The ALJ's finding that Anderson is only partially credible based on his RFC disregards the role of credibility analysis in determining an RFC and therefore should not be sustained.

### B.  Anderson's VA Ratings Decision and Credibility

The ALJ's credibility analysis stated that Anderson made conflicting statements about the reasons for his work absences. Specifically, she noted he claimed during a VA proceeding that he had been absent due to his service related hepatitis but testified at the hearing that his absences were

Page 12 - FINDINGS AND RECOMMENDATION

related to more impairments than the hepatitis. The VA Ratings Decision in the record notes the following exchange between the VA and Anderson: "[a]t the time you filed your claim in May 2001, you reported you had missed about 45 days of work <u>because of the hepatitis</u>. I spoke with you today and you said that [the hepatitis C] had escalated and you had lost about 90 days in the past year." (Tr. 118, emphasis added). Anderson argues that this does not establish that he claimed that his absenteeism was solely related to his hepatitis C because the exchange does not include a direct quote from him and because the hepatitis getting worse and Anderson missing ninety days are not necessarily related. I observe, however, that as the prior sentence noted that Anderson had missed forty-five days due to hepatitis, it was reasonable for the ALJ to conclude that the ninety missed days were also solely due to hepatitis. See e.g., <u>Richardson</u>, 402 U.S. at 401 (stating that substantial evidence means evidence that a reasonable mind might accept as adequate to support a conclusion.) I find that this portion of the credibility analysis is reasonable. To the extent, however, that this finding relied on or was impacted by any of the unsustained credibility findings, the ALJ should reconsider this finding on remand.

    C.    <u>**Positive Waddell Signs and Credibility**</u>

Because the ALJ determined that Anderson suffered from physical and mental impairments, the ALJ could reject his testimony only upon finding "affirmative evidence of malingering" or expressing "clear and convincing reasons" for doing so. <u>Smolen</u>, 80 F.3d at 1283-84. The ALJ found that Dr. Brewster's report that Anderson displayed a positive Waddell sign "suggest[ed] that the degree of Anderson's back pain may be overstated." (Tr. 22). The ALJ does not appear to have found any indication of malingering based on the Waddell tests.

The Waddell test establishes five "signs" of nonorganic sources of lower back pain and does

Page 13 - FINDINGS AND RECOMMENDATION

not distinguish between malingering and psychological conditions. Reinertson v. Barnhart, 127 Fed. Appx. 285, 289 (2005) (citing Gordon Waddell et al., Nonorganic Physical Signs in Low-Back Pain, 5 Spine 117, 118 (Mar.-Apr.1980). Dr. Brewster's physical examination observations noted "Waddell's simulated rotation is positive bilaterally." (Tr. 463). Dr. Brewster did not indicate whether the Waddell sign was attributable to malingering or psychological condition. Moreover, Dr. Brewster did not assign any significance to the positive Waddell sign in his conclusion. (Tr. 467-68). Consequently, the ALJ's finding that the Waddell sign indicated that Anderson's pain testimony was not fully credible is not supported by substantial evidence.

### D.   Alleged Secondary Gain and Crediblity

The ALJ stated that "[g]iven the open status of a worker's compensation claim in addition to this application for social security benefits, I believe the issue of secondary gain looms large." (Tr. 22). An ALJ may not chastise a claimant for seeking disability benefits payments; such reasoning thwarts the very purpose of disability benefit applications. Ratio v. Chafer, 839 F.Supp. 1415, 1428-29 (D. Or. 1993). The ALJ's reasoning that Anderson is not credible because he has an ongoing worker's compensation claim is inconsistent with this standard. Moreover, beyond this general statement that she believed that "secondary gain looms large," the ALJ did not specify how Anderson's worker's compensation claim made him less credible. This finding therefore should not be sustained.

### E.   Medical Records and Credibility

Once a claimant establishes an impairment that could reasonably cause the reported symptoms, the ALJ may not require that the medical evidence corroborate the degree of symptom testimony the claimant offers. Lingenfelter, 504 F.3d at 1036. However, the ALJ may consider a

Page 14 - FINDINGS AND RECOMMENDATION

claimant's medical record in conjunction with the credibility factors. Smolen, 80 F.3d at 1284.

The ALJ found that Anderson's symptom testimony was only partially credible because he had "multiple MRI's with unremarkable results" and did not have any weight loss to support his claim of having severe IBS. (Tr. 22). The ALJ also found, however, that Anderson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms...." (Tr. 22). Anderson therefore meets the first prong of the two-step credibility analysis. The ALJ cannot subsequently require that the medical record support the degree of symptom testimony that Anderson alleges. Lingenfelter, 504 F.3d at 1036. I find that the ALJ erroneously found that Anderson's medical record did not corroborate his symptom testimony. This finding should not be sustained.

### F.     Lay Witness Testimony and Credibility

The ALJ considered a third party report submitted by Anderson's wife on his behalf. The ALJ "accepted Mrs. Anderson's reporting regarding her husband's limitations as descriptive of her perceptions...." The ALJ gave minimal weight to her statements, however, because her observations were "not fully consistent with the medical and other evidence of record, including Mr. Anderson's statements of his own limitations." (Tr. 23). The ALJ can reject lay testimony only by giving specific reasons germane to each witness. Smolen, 80 F.3d at 1298. A finding that the lay witnesses statements were contradicted by medical evidence as well as the claimant's own testimony is a proper reason for discounting lay testimony. Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001). Here, however, the ALJ did not analyze what medical evidence contradicted the lay testimony. Id. (noting that the ALJ analyzed the medical history to a limited extent). Without any analysis of the specific medical evidence which contradicts Mrs. Anderson's report, I cannot find that the ALJ properly rejected her testimony. This finding should not be sustained.

Page 15 - FINDINGS AND RECOMMENDATION

### IV.     The VA Disability Decision

"[A]n ALJ must ordinarily give great weight to a VA determination of disability." <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir.2002). But the VA's disability determination is not binding on the Commissioner. See 20 C.F.R. § 404.1504. "Because the VA and SSA criteria for determining disability are not identical, ... the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." <u>McCartey</u>, 298 F.3d at 1076.

Here, the ALJ found that the VA's disability decision was based on Anderson's self-report in March 2004 of missing ninety days of work in the past year. (Tr. 117-18). She found that the discrepancy between the level of absenteeism he claimed, which the VA relied upon, and his continuing to work for two additional years is "reason enough to minimize the weight given to the VA decision." (Tr. 24). I find that the ALJ's findings are based on a misunderstanding of the record. The letter certifying Anderson's disability reflects that the effective date of the VA finding him ninety percent disabled was December 1, 2007–over a year after Anderson stopped working in February 2006. (Tr. 116). This finding should not be sustained.

### V.     Vocational Expert Testimony

As I have found that the ALJ's RFC and credibility findings cannot be sustained, Anderson's arguments about an incomplete hypothetical question to the Vocational Expert at step 5 is moot. Consequently, I do not address this argument.

### Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178-79 (9th Cir. 2000). The

Page 16 - FINDINGS AND RECOMMENDATION

issue turns on the utility of further proceedings. Id. at 1178. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). Here, the ALJ improperly gave minimal weight to the opinions of Dr. Ford and Dr. Kehrli and erred in her partial rejection of Anderson's and the lay witness's testimony. Her rejection of the VA disability finding is based on a misunderstanding of the record and is not supported by substantial evidence.

Further proceedings are necessary for the ALJ to properly consider limitations arising from the opinions of Dr. Ford and Dr. Kehrli. The ALJ must properly consider limitations stemming from the Anderson's symptom testimony as well as the lay witness report. On remand, the ALJ shall take care to consider the Anderson's credibility in the course of assessing his RFC and not as compared to the RFC. Additionally, the ALJ must re-evaluate the VA Disability determination--specifically that Anderson was not considered ninety percent disabled until December 1, 2007, well after he stopped working.

## Conclusion

As described above, I find that the ALJ's decision denying benefits is not supported by substantial evidence. I recommend that this matter be remanded for further proceedings consistent with this opinion.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that

Page 17 - FINDINGS AND RECOMMENDATION

date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 25st day of March 2011.

THOMAS M. COFFIN
United States Magistrate Judge

Page 18 - FINDINGS AND RECOMMENDATION